**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:11-CR-143 JCM (VCF) |
| Plaintiff, | |
| v. | |
| DAVID GRAY, | |
| Defendant. | |

**ORDER**

Presently before the court are the reports and recommendations of the Honorable Magistrate Judge Cam Ferenbach (docs. #47 and #58) regarding defendant David Gray's motion to suppress evidence pursuant to the Fourth Amendment (doc. #34).

I. Background

Mr. Gray filed the motion to suppress for violation of Fourth Amendment on December 30, 2011. (Doc. #34). The government filed a response on January 23, 2012, (doc. #38) and Mr. Gray replied on February 2, 2012. (Doc. #39). The magistrate judge issued a report and recommendation on March 27, 2012, urging the court to grant Mr. Gray's motion to suppress. (Doc. #47).

Following the magistrate judge's report and recommendation, the government moved for reconsideration. (Doc. #49) Mr. Gray responded (doc. #51) and the government replied (doc. #52). The magistrate judge subsequently issued a second report and recommendation denying the government's motion to reconsider. (Doc. #58). The government has objected. (Doc. #59). Mr. Gray has responded to this objection (doc. #60) and the government has replied (doc. #61). The court now

1    considers both of the magistrate judge's reports and recommendations

2        In his motion to suppress for Fourth Amendment violation, Mr. Gray alleges that police

3    performed an unreasonable search of his vehicle to locate evidence, which was later used to charge

4    him with one count of felon in possession of a firearm. Mr. Gray contends that on December 1, 2010,

5    he entered a public parking garage provided for the use of parolees and probationers. Mr. Gray was

6    there to attend a meeting with his parole officer. On that day, probation officers were conducting

7    searches of all parolees and probationers arriving for scheduled appointments. Mr. Gray notes in his

8    motion, however, that there were no signs or other indications that officers were conducting

9    searches. For unknown reasons, Mr. Gray chose to exit the garage, but officers blocked his vehicle

10   as he attempted to exit.

11       Officers first performed a contraband search of Mr. Gray and the passenger and uncovered

12   nothing. Officers then deployed a drug-sniffing dog and uncovered marijuana and a handgun in the

13   car. Officers also searched the trunk and discovered two clown masks and a set of plastic gloves.

14   They read text messages on Mr. Gray's phone relating to his possession or use of marijuana. These

15   facts are not disputed by either the government or Mr. Gray.

16       II. Discussion

17       Mr. Gray argues that the officers performed an unreasonable search of his vehicle. It is well-

18   established that evidence obtained after an unreasonable search may not constitute proof against Mr.

19   Gray. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). For this reason, a finding that officers

20   did, in fact, conduct an unreasonable search would cause this court to adopt the magistrate judge's

21   ruling and, therefore, grant the motion to suppress. *Id.* at 484 (Rejecting the argument that "a search

22   unlawful at its inception may be validated by what it turns up.").

23       The terms of Gray's probation require him to "submit [his] person, place of residence, vehicle

24   or areas under [his] control to search at any time, with or without a search warrant." (Doc. #38, Ex.

25   A). Here, the determinative question is whether officers had knowledge that Gray was a probationer

26   prior to conducting the search. *See e.g. Samson v. California*, 547 U.S. 843, 856 (2006) (holding that

27   ". . . an officer would not act reasonably in conducting a suspicionless search absent knowledge that

28

the person stopped for the search is a parolee."); *See also Moreno v. Baca*, 431 F.3d 633, 641 (9th Cir. 2005) ("Officers cannot retroactively justify a suspicionless search . . . on the basis of an after-the-fact discovery of . . . a parole condition.); *United States v. Montero-Camargo*, 208 F.3d 1122, 1139 (9th Cir. 2000) (a turnaround [from a checkpoint] alone is not enough in and of itself to create reasonable suspicion.).

Officers argue that they could reasonably discern that Mr. Gray was a probationer because the garage was clearly marked as "Parole and Probation" parking. (Doc. #38, at 6). Mr. Gray argues–and this court agrees–that the vehicle could have entered the garage for a number of reasons unrelated to parole or probation. (Doc. #34, at 6). There was no point at which Mr. Gray was required to confirm his business or purpose of visit prior to entering the garage. As such, there was no way officers were truly aware of his status as a probationer simply because he entered the garage.

The government asserts that Mr. Gray's attempt to exit the garage further supported their suspicion because he "acted in a manner indicative of a supervisee seeking to avoid being searched." (Doc. #38, at 6). However, the government offers no argument as to why, exactly, attempting to exit the garage indicated that he was a "supervisee seeking to avoid being searched."

Further, the government contends that they "perceived [Mr. Gray's] flight" as accompanying a "deer in the headlight look" when attempting to leave the garage. (Doc. #38 at 9). However, the government also admits that they blocked Mr. Gray's car when he attempted to exit. Assuming Mr. Gray did have such a look on his face, any ordinary man is likely to react in this manner upon having his vehicle blocked by a police officer. *Id.* at 2. Without further support, the fact that Mr. Gray attempted to exit the garage and appeared as a "deer in headlights" upon having his vehicle blocked is simply not enough to determine that he was acting as a "supervisee seeking to avoid being searched." *Id*. at 6.

Finally, the government states that the officers had determined Mr. Gray's identity and were aware of his status as a probationer "by the time they searched his vehicle." (Doc. #38, at 7). The magistrate judge found that the government did not present a timeline of events to establish that the officers actually knew Mr. Gray's status as a supervisee prior to the search. (Doc. #47, at 14). In its

1    motion to reconsider the report and recommendation, the government posits that the officer would

2    testify that he was "sure the defendant identified himself as a supervisee, because if [he] had not

3    identified himself, [the officer] would have taken other steps to determine [Mr. Gray's] status. . . "

4    (Doc. #58, at 5). This court finds that the government has failed to establish a definite timeline

5    because it fallaciously bases its argument on what an officer *did not* do to prove what must have

6    occurred.

7        Accordingly,

8        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that the report and

9    recommendation of Magistrate Judge Ferenbach regarding the suppression of evidence (doc. #47)

10   be, and the same hereby is, ADOPTED in its entirety.

11       IT IS THEREFORE ORDERED that defendant's motion to suppress (doc. #34) be, and the

12   same hereby is, GRANTED.

13       IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that the report and

14   recommendation of Magistrate Judge Ferenbach regarding the government's motion to reconsider

15   (doc. #58) be, and the same hereby is, ADOPTED in its entirety.

16       IT IS THEREFORE ORDERED that plaintiff's motion to reconsider (doc. #49) be, and the

17   same hereby is, DENIED.

18       DATED June 27, 2012.

19

20      _____

           **UNITED STATES DISTRICT JUDGE**

21

22

23

24

25

26

27

28